UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ASHLEY GEORGES,

                Plaintiff,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, *et. al.*,

                Defendants.

Civ. Action No. 22-5559 (JXN) (JRA)

**OPINION**

**NEALS, District Judge**

This matter comes before the Court on a motion to dismiss filed by Defendants New Jersey Department of Corrections ("DOC"), Officer Becker, Officer Fronduto, Leslie Russel, Ryan McGuire, Herb Eigenrauch, James Russo, and Karyn Parker-Foreman (collectively "Defendants"). (ECF No. 7.) Defendants seek dismissal of Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Having reviewed the parties' submissions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b), for the reasons stated herein, Defendants' motion (ECF No. 7) is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**[1]

On June 13, 2022, Plaintiff Ashley Georges ("Plaintiff"), a prisoner confined at East Jersey State Prison ("EJSP") at the time of the events alleged, filed a Complaint in the Superior Court of New Jersey, Law Division-Middlesex County alleging violations of his civil rights by various

---

[1] For the purposes of this motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in the facts alleged in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

prison officials. (ECF No. 1-1.) Plaintiff's Complaint raises claims against DOC, Officer Becker ("Becker"), Officer Fronduto ("Fronduto"), Disciplinary Hearing Officer Leslie Russel ("Russel"), Ryan McGuire ("McGuire"), Herb Eigenrauch ("Eigenrauch"), Karyn Parker-Foreman ("Parker-Foreman"), Assistant Superintendent James Russo ("Russo"), EJSP Administrator Robert Chetirkin, Lieutenant Raul, and Robin Keller. (*See* ECF No. 1-1.) On September 14, 2022, Defendants Becker, Fronduto, Russel and the DOC removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (*See* ECF No. 1.)

In the Complaint, Plaintiff submits that on October 21, 2021, Defendants Fronduto and Becker transported Plaintiff to Northern State Prison ("NSP") to attend a scheduled physical therapy appointment. (*Id.* ¶ 7.) While waiting outside of NSP, Plaintiff informed Defendants Fronduto and Becker that he needed to use the bathroom but was told he would have to wait. (*Id.* ¶ 8.) After some time had passed, Plaintiff again expressed his need to use the bathroom and requested a supervisor be called on his behalf. (*Id.*) Fronduto and Becker ignored Plaintiff's request. (*Id.*) Sometime later, while shackled in the secured compartment of the transport van, Plaintiff "pleaded with Defendants Fronduto and Becker that he could no longer hold his urine." (*Id.* ¶ 9.) Plaintiff was told to "do what [he] [had] to do." (*Id.*) Plaintiff then "proceed to turn his back away from the inmate that was placed in the same side compartment of the van, to not expose himself, and was forced to urinate in the transport van while his hands and feet were shackled." (*Id.* ¶ 10.) After the incident, Plaintiff told Fronduto and Becker that he would write them up and file a lawsuit against them for depriving him the use of a bathroom for an unreasonable amount of time. (*Id.* ¶ 11.)

Upon Plaintiff's return to EJSP, he was placed in prehearing detention and then, the following day, was served with four disciplinary charges: (1) *012 throwing bodily fluid. . .;

2

(2) *306 conduct which disrupts . . .; (3) .053 indecent exposure; and (4) .152 destroying state property. (*Id.* ¶¶ 12-13.) Plaintiff submits that Fronduto fabricated that Plaintiff stated, "I will just piss in the back of the van" and then "proceeded to urinate all over the compartments and backdoors... in full view of the other [inmates] and our vehicle cameras." (*Id.* ¶ 15.) Defendant Lieutenant Raul authorized the falsified charges against Plaintiff. (*Id.*)

On October 22, 2021, after Plaintiff was served with the disciplinary charge but prior to receiving a hearing, Plaintiff was placed in a double cell on 3 Wing, a "quasi-administrative wing" where inmates who are found guilty of disciplinary infractions are placed as punishment. (*Id.* ¶ 16.) Plaintiff alleges that Defendants McGuire and Eigenrauch ignored Plaintiff's complaints regarding being placed in a double cell during a pandemic and his demands for a hearing. (*Id.* ¶ 17.) Plaintiff submitted an inquiry and Defendants Russo, EJSP Administrator Robert Chetirkin, and EJSP Assistant Superintendent Robin Keller informed him that the Administration was authorized to place him in 3 Wing. (*Id.* ¶ 18.) Plaintiff submits that confinement in 3 Wing was dangerous during the pandemic and Plaintiff was personally vulnerable due to a July 4, 2021 left pectoral injury and a July 19, 2021 elbow surgery. (*Id.* ¶¶ 24-27.)

On November 4, 2021, Defendant Russell dismissed all four of the original disciplinary charges against Plaintiff and modified the charges to a single charge of .651 being unsanitary. (*Id.* ¶ 19.) Without giving Plaintiff 24-hours' notice to prepare a defense to the modified charge, Defendant Russell sanctioned Plaintiff to an on-the-spot-sanction. (*Id.*) Defendant Russell violated Plaintiff's due process rights to support Defendant Fronduto's misconduct. (*Id.* ¶ 20.) As a result, Plaintiff was forced to remain on 3 Wing in a double cell during a pandemic as an "unauthorized imposed sanction." (*Id.*)

3

Plaintiff alleges Defendants Russo, Eigenrauch, and McGuire conspired to keep Plaintiff housed in 3 Wing for writing grievances regarding the conditions in 3 Wing. (*Id.* at 13, ¶ 28.) On December 29, 2021, Plaintiff "was placed in isolation on false charges by Defendant [] McGuire." (*Id.* at 13, ¶ 29.) On January 5, 2022, Plaintiff was placed back in 3 Wing "breaking covid protocols while 3 Wing was actively on quarantine." (*Id.*) In March 2022, Defendants falsely placed guilty findings of indecent exposure on Plaintiff's progress report, despite that charge being dismissed on November 4, 2021. (*Id.* ¶ 30.)

Defendant Parker-Foreman, the Executive Assistant for EJSP, interfered with Plaintiff's ability to appeal to the Appellate Division by intentionally providing Plaintiff with a deficient copy of his grievance. (*Id.* at 14, ¶ 28.)

On October 21, 2022, Defendants moved for dismissal of Plaintiff's Complaint against them. (ECF No. 7.) Plaintiff opposed Defendants' motion (ECF No. 10) and Defendants replied in further support (ECF No. 14). The motion is now fully briefed and ready for disposition.

## II.   LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the ... claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted). In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.*

4

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Stated differently, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

## III.   DISCUSSION

Defendants argue that Plaintiff's claims against them should be dismissed because his claims are not cognizable against the DOC, or against the Corrections Defendants in their official capacities. Further, Defendants assert that all of Plaintiff's claims are barred by the *Heck*[2] doctrine, Plaintiff's Complaint fails to state any cognizable retaliation claim against the Corrections Defendants, Plaintiff's claim fails to state any violation of his Due Process Rights, and Plaintiff's claim fails to state any violation of his Equal Protection Rights. (*See* ECF No. 7-1.)

### A. *Heck v. Humphrey*

Defendants move to dismiss Plaintiff's Complaint arguing that all of Plaintiff's claims based on his disciplinary hearing are barred by the rule set forth in *Heck v. Humphrey*, 512 U.S.

---

[2] *Heck v. Humphrey*, 512 U.S. 477 (1994).

5

477 (1994), which bars a 42 U.S.C. § 1983 due process claim related to a disciplinary hearing unless the hearing officer's determination is subsequently invalidated. (ECF No. 7-1 at 12-15.) However, *Heck* and its progeny are more nuanced than Defendants argue.

As noted above, Plaintiff alleges Defendants violated his due process rights when they conspired to retaliate against him by bringing false disciplinary charges and then the hearing officer failed to provide him with adequate notice and placed him in administrative segregation to support the false charges. (*See* ECF No. 1-1 ¶ 19.)

In *Heck*, the Supreme Court held that a prisoner may not pursue a § 1983 action which necessarily impugns the validity of the conviction or duration of sentence, unless first demonstrating that the conviction or sentence has already been invalidated. 512 U.S. at 486–87. In *Edwards*, the Supreme Court extended the "Heck doctrine" to circumstances where a prisoner's civil rights action would imply the invalidity of the loss of good time credits after a prison disciplinary hearing. *Edwards v. Balisock*, 520 U.S. 641, 644-45 (1997). A prisoner may have a civil rights action for money damages for a procedural due process violation under the Fifth Amendment when the due process violation resulted in a loss of good time credits. *See Schreane v. Marr*, 722 F. App'x 160, 166 (3d Cir. 2018) (dismissal of procedural due process claim for money damages that would invalidate loss of good time credits is without prejudice and may be renewed upon a successful petition for writ of habeas corpus.)

Conversely, a § 1983 claim may proceed that will not necessarily invalidate the underlying conviction or sentence. *See Muhammad v. Close*, 540 U.S. 749, 754 (2004) (discussing "the mistaken view expressed in Circuit precedent that *Heck* applies categorically to all suits challenging prison disciplinary proceedings.") In *Muhammad*, the Supreme Court addressed the applicability of *Heck* and *Edwards* to a § 1983 suit challenging a prisoner's segregation prior to a disciplinary hearing where he was acquitted of the charged offense and thus lost no earned credits.

540 U.S. 749. Under *Muhammad*, *Heck* does not bar a prisoner's § 1983 suit when a favorable verdict would not affect his conviction or the duration of his sentence. *540 U.S.* at 751. Because the petitioner lost no good-time credits as a result of the challenged action, his § 1983 suit "could not therefore be construed as seeking a judgment at odds with his conviction or . . . time to be served in accordance with the underlying sentence." *Muhammad*, *540 U.S.* at 754–55.

At issue is whether a favorable outcome on Plaintiff's due process claims would necessarily imply the invalidity of Plaintiff's underlying conviction or sentence and is thus barred under *Heck* or *Edwards*. Plaintiff does not allege in his Complaint that his disciplinary hearing or any of his due process claims resulted in the loss of good-time credits. Defendants argue that success on Plaintiff's due process claims would "contradict or undermine the validity of [his] disciplinary proceeding" (*see* ECF No. 7-1 at 14), but, as clarified by the Supreme Court in *Muhammad*, the conviction or sentence that matters under *Heck* is the conviction or sentence ordered by the original judgment of conviction, not the disciplinary sentence. 540 U.S. 751 n.1. As Plaintiff does not allege that his due process claims affected his underlying judgment of conviction or sentence, Defendants' motion to dismiss is denied as to this issue.

### B. Failure to State a Claim- First Amendment Retaliation

Defendants argue that Plaintiff has failed to plead sufficient facts to allege a First Amendment retaliation claim against Defendants. (*See* ECF No. 7-1 at 16-18.)

Prison officials may not interfere with a prisoner's exercise of First Amendment rights unless interference is reasonably related to a legitimate penological interest, nor may prison officials retaliate against a prisoner for exercising his First Amendment rights. *See Turner v. Safley*, 482 U.S. 78, 90 (1987). An incarcerated plaintiff pleads a claim for retaliation by alleging that "(1) he engaged in constitutionally protected conduct[,] (2) he suffered an adverse action[,] and (3) the

7

constitutionally protected conduct was a substantial or motivating factor for the adverse action." *Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017); *see also Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001). A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

Plaintiff alleges that Defendants Becker and Fronduto refused to allow Plaintiff to exit the transport vehicle to use the bathroom and told Plaintiff "to do what he must do." (ECF No. 1-1 ¶¶ 8-10.) Plaintiff then told Defendants he was going to file a grievance regarding their refusal to allow him to use the bathroom. (*Id.* ¶ 11.) Plaintiff claims Defendants then falsified a disciplinary report against him in retaliation. (*Id.* ¶ 15.) Defendants acknowledge that an inmate informing prison officials of an intent to file a grievance can be considered constitutionally protected conduct. (ECF No. 1-1 at 17.) However, Defendants argue that Plaintiff's threat that he was going to file a grievance must be grounded upon a sufficient grievance claim. (*Id.*) Defendants argue that Plaintiff's threat that he was going to file a grievance regarding Defendants' refusal to allow him to use the restroom is not sufficient to support a claim of retaliation because the threat relied upon Plaintiff's action of urinating in the van and Plaintiff was ultimately punished for that action. (*Id.* at 17-18.)

Defendants' argument misconstrues the facts alleged in the Complaint. Plaintiff alleges that he threatened to file a grievance regarding their refusal to allow Plaintiff to use the bathroom over an extended period of time. (*See* ECF No. 1-1 ¶¶ 8-10.) Plaintiff's grievance threat was grounded upon an Eighth Amendment claim that he was unconstitutionally deprived a basic life necessity. Plaintiff's allegation that Defendants Becker and Fronduto falsely charged Plaintiff with

8

disciplinary action in retaliation for his threat to file a grievance regarding his Eighth Amendment claim implicates conduct protected by the First Amendment. *See Mitchell*, 318 F.3d at 530.

Defendants also argue that Defendants Becker and Fronduto's decision to report Plaintiff's behavior was related to the valid penological interest of maintaining discipline pursuant to N.J.A.C. 10A: 4-4.1 and Plaintiff was ultimately found guilty of .651 being unsanitary. (*Id.* at 18.) At this early stage, accepting the facts alleged in the Complaint in the light most favorable to Plaintiff, it is unclear if Defendants filed disciplinary charges against Plaintiff for the legitimate penological interest of maintaining discipline or because Plaintiff threatened to grieve the fact that Defendants refused to allow Plaintiff to use the bathroom over an extended period of time. The Complaint submits facts sufficient to state claim that Plaintiff's threat that he was going to exercise his constitutionally protected right to file a grievance was the motivating factor behind Defendants Becker and Fronduto's decision to file disciplinary charges against Plaintiff.

Plaintiff has sufficiently plead a retaliation claim against Defendants Becker and Fronduto. Therefore, Defendants' motion to dismiss will be denied as to this issue.

### C. Failure to State a Claim- Procedural Due Process

Defendants next move for dismissal of Plaintiff's procedural due process claims arguing that Plaintiff has failed to avail himself of all the state procedural remedies available. (*See* ECF No. 1-1 at 18-20.) They argue that the New Jersey Rules of Court provide the Appellate Division with exclusive jurisdiction over review of agency actions. (*Id.* at 19.) Defendants argue Plaintiff does not allege that he pursued all available state processes, i.e., relief from the Appellate Division, or that the processes were unavailable to him. (*Id.* at 20.)

Accepting the facts alleged in the light most favorable to Plaintiff, there is a factual dispute whether an appeal to the Appellate Division was available to Plaintiff. The Complaint alleges that Defendant Parker-Foreman interfered with Plaintiff's ability to appeal to the Appellate Division

9

by intentionally providing Plaintiff with a deficient copy of his grievance. (ECF No. 1-1 at 14, ¶ 28.) Plaintiff appears to argue that the state process of appealing to the Appellate Division was unavailable to him. As such, Defendants' motion to dismiss is denied as to this argument.

### D. Failure to State a Claim- Substantive Due Process

Defendants submit that Plaintiff raises a substantive due process claim regarding Defendants Becker and Fronduto's refusal to allow Plaintiff to use the bathroom. (*See* ECF No. 7-1 at 21-22.) Defendants argue that claim must be dismissed because Defendants' actions do not approach the threshold of egregious, as to shock the conscious. (*Id.*)

"The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To plead a plausible substantive due process claim, a plaintiff must allege conduct that is "arbitrary[ ] or conscious shocking." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *see also Collura v. Disciplinary Bd. of Supreme Ct. of Pa.*, Civ. A. No. 11-5637, 2013 WL 4479141, at *7 (E.D. Pa. Aug. 22, 2013) ("To state a substantive due process claim, the plaintiff must allege that he was deprived of a fundamental right, and that the government conduct at issue was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (citations and internal quotation marks omitted)), aff'd, 569 F. App'x 114 (3d Cir. 2014). The United States Supreme Court "'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended.'" *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). Thus, "[u]nder the more-specific-provision rule, 'if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to

10

that specific provision, not under the rubric of substantive due process.'" *See id.* (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

The Court notes that the Complaint does not explicitly raise a substantive due process claim. However, to the extent Defendants argue Plaintiff raised a Fourteenth Amendment substantive due process claim regarding Defendants' refusal to allow Plaintiff to use the bathroom, that claim is dismissed because it is covered by the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (finding to establish an Eight Amendment violation based on conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the civilized measure of life's necessities."); *see also McKinney v. Lanigan*, No. 18-8618, 2022 WL 10075302, at * 5 (D.N.J. Oct. 17, 2022) (considering whether the denial of a restroom amounts to cruel and unusual punishment); *Evans-Salter v. Wetzel*, No. 19-950, 2020 WL 5819764 at *3 (M.D. Pa. Sept. 30, 2020) (collecting cases finding no Eighth Amendment constitutional violation for denial of bathroom access for periods between twenty minutes and eight hours at a time). The more-specific-provision requires Plaintiff's substantive due process claim to be analyzed under the Eighth Amendment.[3] Consequently, the Court will grant Defendants' motion to dismiss Plaintiff's substantive due process claim.[4] *See Porter*, 974 F.3d at 447 (holding that a prisoner's substantive due process claim challenged the same conduct as his Eighth Amendment claim and was thus barred under the more-specific-provision rule).

---

[3] Plaintiff's opposition brief appears to allege that a substantive due process claim would also arise from the allegation that disciplinary charges were brought in retaliation for Plaintiff's filing of grievances. However, that claim is addressed above under the more-specific-provision of the First Amendment.

[4] Defendants do not move for dismissal of Plaintiff's Eighth Amendment conditions of confinement claims, as such, the Court will not address them.

### E. Failure to State a Claim- Fourteenth Amendment's Equal Protection Clause

Defendants move for dismissal of Plaintiff's Fourteenth Amendment Equal Protection Clause claim. (*See* ECF No. 7-1 at 22-23.) Defendants argue that the Complaint lacks any support that Plaintiff is a member of a protected class and received different treatment than other similarly situation individuals. (*Id.*)

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. To bring a successful claim pursuant to 42 U.S.C. § 1983 for a denial of equal protection, a plaintiff must plead sufficient facts to indicate the existence of purposeful discrimination and that he was treated differently than others similarly situated to him. *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).

Plaintiff indicated that he submitted his Complaint "having state and federal constitutional merits of Equal Protection rights." (ECF No. 1-1 at 6.) Aside from Plaintiff's use of the term Equal Protection, the Complaint provides no supporting factual allegations to show purposeful discrimination. The Complaint is devoid of facts indicating a group of "similarly situated" individuals that were treated differently from Plaintiff. In Plaintiff's opposition brief, he argues he is "among a suspected class of individuals targeted for filing grievances due to the conditions of confinement." (ECF No. 10 at 10.) Plaintiff alleges that he is a member of a protected class of prisoners who fight for improvement of poor prison conditions, and he is treated differently from others who do not advocate for better prison conditions. Plaintiff appears to argue that the filing of grievances makes him a member of a protected class but offers no support for that contention.

Additionally, Plaintiff fails to allege any specific facts that other inmates who have threatened to file grievances have had false charges brought against them. Plaintiff does not allege facts that other individuals who have urinated in a transport van, but did not threaten to file a grievance, did not have disciplinary charges filed against them. Plaintiff's allegations do not state a Fourteenth Amendment Equal Protection Clause claim. Defendants' motion to dismiss is granted as to this claim.

### F. Official Capacity Claims under the New Jersey Civil Rights Act and 42 U.S.C. §1983

Defendants seek to dismiss Plaintiff's Complaint against them in their official capacities. (*See* ECF No. 7-1 at 24-26.) Defendants assert that Plaintiff's claims against them in their official capacities must be dismissed because Defendants are not "persons" subject to liability under the New Jersey Civil Rights Act ("NJCRA") or 42 U.S.C. § 1983. (*Id.*)

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, to obtain relief under § 1983, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). It is well-established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). As such, "neither a State nor its officials

acting in their official capacities are 'persons' under § 1983." *Will*, *491 U.S.* at 71. Nevertheless, a plaintiff may bring a § 1983 claim against a state actor in his or her personal capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* As the Supreme Court has explained:

> *Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device. State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

*Melo, 502 U.S.* at 27. "In determining whether [a plaintiff has sued an official] in her personal capacity, official capacity, or both, [courts] . . . look to the complaints and the course of proceedings." *Hafer v. Melo*, 912 F.2d at 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991) (internal citations and quotations omitted). In addition, although a state actor acting in his or her official capacity cannot be sued for money damages under § 1983, an exception to that general rule permits a plaintiff to seek injunctive relief against state actors in their official capacities. *See Will*, 491 U.S. at 92.

Here, the Complaint raises claims under §1983 and NJCRA against Defendants in their official capacity. (*See* ECF No. 1-1 at 15.) The Complaint does not indicate the relief sought. However, Plaintiff may not proceed against Defendants in their official capacity for monetary damages, the Court will grant the motion to dismiss the § 1983 and NJCRA claims against Defendants in their official capacity.[5]

---

[5] The NJCRA is "intended to provide New Jersey citizens with a state analogue to Section [] 1983 actions." *Surina v. S. River Bd. of Educ.*, No. 17-2173, 2018 WL 3617970, at *11 (D.N.J. July 30, 2018). For this reason, the Court's analysis regarding Section 1983 applies with equal force to Plaintiff's claims under the NJCRA.

14

## IV.   CONCLUSION

Based on the foregoing, Defendants' New Jersey Department of Corrections, Officer Becker, Officer Fronduto, Leslie Russel, Ryan McGuire, Herb Eigenrauch, James Russo, and Karyn Parker-Foreman motion to dismiss (ECF No. 7) is **GRANTED in part**. Plaintiff's official capacity claims under the New Jersey Civil Rights Act and 42 U.S.C. § 1983 and substantive due process claim are **DISMISSED with prejudice**. Plaintiff's Equal Protection Clause claim against these moving Defendants is **DISMISSED without prejudice**. Defendants motion to dismiss (ECF No. 7) is **DENIED in part** as to Plaintiff's procedural due process claim and First Amendment retaliation claim.

Generally, a court should provide a *pro se* plaintiff with leave to amend deficient claims, unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). For the reasons outlined above, Plaintiff's Fourteenth Amendment substantive due process claim, and official capacity claims, are legally inadequate and thus incurable; for these reasons, the Court concludes that curative amendment would be futile with respect to these claims. However, Plaintiff will be afforded an opportunity to amend his Equal Protection Clause claim. Plaintiff may file an amended complaint, remedying the deficiencies outlined above, within twenty-one (21) days of this Opinion and the corresponding Order. An appropriate Order accompanies this Opinion.

**Dated:** May 1, 2023

JULIEN XAVIER NEALS
United States District Judge